Date signed October 30, 2014



PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

|  |  |  |
|---|---|---|
| IN RE: | : | |
| | : | |
| NOEL TSHIANI | : | Case No. 14-14920PM |
| | : | Chapter 7 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| NOEL TSHIANI | : | |
| Plaintiff | : | |
| vs. | : | Adversary No. 14-0459PM |
| | : | |
| JOHN MONAHAN | : | |
| Defendant | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

### MEMORANDUM OF DECISION

Before the court is the Defendant's Motion to Dismiss the Complaint. The Plaintiff/Debtor seeks, pursuant to 11 U.S.C. § 362(k)(1), compensatory damages of $10,000.00 and punitive damages of $500,000.00 based on the Defendant's alleged violation of the automatic stay. The Defendant, John Monahan ("Monahan"), is the court appointed Trustee in the case of *Marie-Louise Tshiani v. Noel Tshiani*, Case No. 75765FL, filed in the Circuit Court for Montgomery County - Domestic System. Monahan was appointed September 26, 2012, and his function was to sell the real property commonly known as 8117 Autumn Gate Lane, Bethesda, Maryland.

The Debtor filed a bankruptcy case under Chapter 13 on March 28, 2014, and the case was converted to a case under Chapter 7 on May 7, 2014, on the Debtor's Notice of Conversion filed pursuant to Bankruptcy Rule 1017(f)(3). The Complaint charges, notwithstanding Monahan's actual knowledge of this bankruptcy filing, that Monahan appeared in the Circuit

Court on or about May 1, 2014, and requested an order that the Debtor be found in constructive

contempt and that the Debtor could purge the contempt by vacating the Autumn Gate premises

by May 3, 2014. The Debtor further charges that the actions of Monahan were efforts to obtain

possession of property of the estate and to exercise control over it, a violation of 11 U.S.C.

§ 362(a)(3). Roger Schlossberg, the Chapter 7 Trustee, has not intervened in this action to

challenge Monahan's actions. Under 11 U.S.C. § 541, Trustee Schlossberg is the real party in

interest as the owner of all property of the estate, including the Autumn Gate property, subject to

the Debtor's claim of exemption of $22,975.00 of the proceeds.

Before getting into the dreary history of the exceptionally bitter domestic action, as

evidenced by the 430 entries in the docket, and the efforts by Monahan to exercise his appointed

duties, the court is concerned with the application of the doctrine of *Barton v. Barbour*, 104 U.S.

126 (1881), and whether the court has jurisdiction over this adversary proceeding. In *Barton v.

Barbour,* the Supreme Court of the United States determined that the Supreme Court of the

District of Columbia lacked jurisdiction to entertain a suit against a receiver of a railroad,

appointed by the Virginia Court, for injuries received by plaintiff, where the suit was brought

without permission of the Virginia Court. As was explained in the case of *McDaniel v. Blust*,

668 F.3d 153 (CA4 2012):

> The Supreme Court established in *Barton* that before another court may obtain
> subject-matter jurisdiction over a suit filed against a receiver for acts committed in his
> official capacity, the plaintiff must obtain leave of the court that appointed the receiver.
> *See Muratore v. Darr*, 375 F.3d 140, 143 (1st Cir. 2004). This principle has been
> extended to suits against bankruptcy trustees, *see id.*; *Beck v. Fort James Corp. (In re
> Crown Vantage, Inc.)*, 421 F.3d 963, 971 (9th Cir.2005), and to suits against trustees'
> attorneys, see *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 321 (6th Cir.
> 2006). To determine whether a complained-of act falls under the *Barton* doctrine, courts
> consider the nature of the function that the trustee or his counsel was performing during
> commission of the actions for which liability is sought. *See Heavrin v. Schilling (In re
> Triple S Rests., Inc.)*, 519 F.3d 575, 578 (6th Cir.2008). When trustees act "within the
> context" of their role of "recovering assets for the estate," leave must be obtained. *Id.*
> Acts are presumed to be part of the duties of the trustee or his counsel "unless Plaintiff
> initially alleges at the outset facts demonstrating otherwise." *In re Lowenbraun*, 453 F.3d
> at 322 (internal quotation marks). (footnotes omitted)

The Debtor obtained no such leave from the Circuit Court. Thus, this court finds it lacks

jurisdiction over this matter in accordance with the doctrine of *Barton v. Barbour* and its

progeny. *See In re Silver Oak Homes, Ltd.* 167 B.R. 389, 394, 395 (B.C. Md. 1994); *Alexander

v. Hedback*, 718 F.3d 762, 767-68 (CA8 2013).

Aside from this court's finding as to the *Barton* doctrine issue, a review of the docket in the state court action graphically illustrates the conclusion that the contempt order was entered to uphold the dignity of the state court in view of the Debtor's continuous obstructive behavior. With regard to the question of whether a civil contempt motion required relief from the automatic stay, most courts consider whether the civil contempt proceeding is one intended to effectuate collection of a judgment or one which is intended to uphold the dignity of the court. If it is to uphold the court's dignity, the civil contempt order is outside the scope of the bankruptcy stay. *See, e.g., Nnoli v. Nnoli,* 646 A.2d 1021, 1024-25 (Md. App. 1994)*; In re Burgess*, 503 B.R. 154, 156-57 (BC M.D. Fla 2014) ("For two reasons this Court adopts the view that a contempt order issued in a civil case is criminal in nature for purposes of section 362(b) if it intended to uphold or vindicate the court's authority or dignity. First, that approach is consistent with pre-Code law. (footnote omitted)  It is well settled that the Bankruptcy Code must be construed in light of its common-law background. (footnote omitted)  Historically, a court's power to hold a party in contempt in order to uphold or protect the court's dignity has been viewed as a fundamental interest that may be limited by Congress only with the clearest statement of intent. (footnote omitted)  Neither section 362(a) nor 362(b) reflects an intent to limit a power that is historically rooted in this nation's judicial system."); *Kukui Gardens Corp. v. Holco Capital Group, Inc.,* 675 F.Supp.2d 1016, 1027 (D. Hi. 2009); *In re Lowery,* 292 B.R. 645 (BC. E.D. Mo. 2003); *Stovall v. Stovall,* 126 B.R. 814, 815 (N.D. Ga.1990) (holding that contempt intended to uphold dignity of court not stayed by bankruptcy filing even where contempt judgment is payable to opposing party). *See also U.S. Sprint Comm. Co. v. Buscher,* 89 B.R. 154, 156 (D. Kan.1988) ("It is within [a] court's inherent power to take whatever steps necessary to ensure those persons within its power comply with its orders. The court cannot conceive that Congress intended to strip the court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge.")

A review of the 60-page state court docket, attached as Exhibit 1 to Monahan's Motion to Dismiss, amply demonstrates the exasperation of the judges handling the case and the Debtor's tactics to delay the judicial process. This did not involve a single act but was continuous willful conduct. Below, the court summarizes the state court docket entries and refers to the parties as they were in Circuit Court, where the Debtor is the Defendant and the Plaintiff is Marie-Louise Ntumba a.k.a. Marie-Louise Tshiani. Italicized entries reflect activity in the Debtor's bankruptcy case.

* * *

2/6/09 - Complaint for Absolute Divorce or in the Alternative, Limited Divorce, filed with a Memorandum that Plaintiff is represented by an attorney with the House of Ruth Domestic Violence Legal Clinic.

9/4/09 - Plaintiff's Motion to Compel and Impose Sanctions for Failure to Provide Discovery.

11/12/09 - Plaintiff awarded sole legal and physical custody, exclusive use of the marital home and child support of $2,886.00 and denied pendente lite alimony.

12/17/09 - Defendant files line stating that there has been no service of show cause order.

12/18/09 - Court grants Motion for Alternative Service.

1/22/10 - Court finds Defendant in contempt and sets purge provisions to vacate home.

1/22/10 - Court denies Defendant's Motion for Reconsideration and to Stay Execution of Order.

3/4/10 - Court grants Plaintiff's Motion to Compel or Impose Sanctions.

5/13/10 - District Court of Maryland Domestic Violence Case transferred to the Circuit Court to be considered along with the divorce action.

10/25/10 - Two day trial held by Circuit Court.

1/7/11 - Order of court entered granting Plaintiff an absolute divorce, alimony, child support and medical expenses, and judgments entered in favor of Plaintiff against Defendant in the amount of $543,000.00 and in favor of the House of Ruth Domestic Violence Clinic against Defendant in the sum of $23,493.75 as to legal fees.

1/31/11 - Defendant's Notice of Appeal filed. (The judgment of the Circuit Court was affirmed by the Court of Special Appeals on 11/21/12, *Tshiani v. Tshiani*, 56 A.3d 311 (Md. App. 2012). After a writ of certiorari was granted, the judgment of the Court of Special Appeals was affirmed by the Court of Appeals, 81 A.3d 414 (2013). The issue before the Court of Appeals was the validity of the parties' marriage in the Democratic Republic of the Congo where the Debtor took part by telephone. The court held that it was valid.)

06/03/11 - Orders entered granting Plaintiff's Motion to Dismiss Defendant's Complaint for Custody and Defendant's Complaint for Modification of Custody.

8/15/11 - Defendant files Complaint to Seek Custody of Children.

10/03/11 - Defendant's Motion to Waive Supersedeas Bond denied.

10/21/11 - Court grants Plaintiff's Motion to Strike and Dismiss Defendant's Complaint to Seek Custody of Children and for Attorney's Fees for a Bad Faith Filing.

4/27/12 - Plaintiff files Motion for Sale of Real Property and for appointment of a trustee.

5/8/12 - Orders entered denying Defendant's Motion to Modify Custody and Petition for Contempt and granting Plaintiff's Complaint for Modification of Visitation.

8/17/12 - Defendant's "Motion to Suppress Testimonies of Children Held Hostages and Seek a Hearing a De Novo" denied.

8/27/12 - Defendant files Motions to Reduce Child Support, to Stay Alimony and to Seek Custody.

9/26/12 - Order Appointing Monahan as trustee of the property.

11/14/12 - Motion for Reconsideration of Appointment of Trustee denied.

1/18/13 - Orders entered granting Plaintiff's Motion to Dismiss Defendant's Motion to Seek Custody of the Children, denying Defendant's Motion to Stay Alimony and Assignment Office directed to remove all future hearings in the case.

1/30/13 - Trustee's Motion to Compel granted.

2/20/13 - Order entered commanding Defendant to appear at a pre-hearing conference and appear for a hearing on the Motion for Constructive Civil Contempt.

5/31/13 - After a hearing on the trustee's motion for contempt, the court found Defendant in contempt and committed him to the Montgomery County Detention Center pending compliance with the court's order entered 1/30/13.

6/11/13 - Civil Constructive Contempt order amended.  The court finding that Defendant willfully and knowingly failed to comply with the order of 1/30/13, and set forth actions Defendant must take to purge the contempt and remain at liberty. Defendant to be released upon his cooperation with the trustee who is to enter and sell the real estate. Upon assurances from Defendant, the court found that Defendant had purged his contempt.

7/19/13 - Defendant files Motions to Dismiss Monahan as trustee and to reconsider Order of Post Judgment/Custody.

9/13/13 - Defendant's Motion to Reconsider Post Judgment/Custody denied.

10/30/13 - Monahan's Motion for Installation of Lock Box granted.  Defendant's Motion to Dismiss Monahan at trustee denied.

2/4/14 - Monahan's Motion filed 1/3/04, to change locks on the premises and restrict Defendant's Access to the property granted.

3/11/14 - Trustee's  Motion for the Issuance of a Body Attachment for Defendant granted, in part.

3/12/14 - Court orders Defendant to vacate the property and provide the trustee with all keys and that neither Defendant nor his agents are to return to the property or enter the premises and that any return shall be treated as a trespass.  Should Defendant be found in contempt of the order, he may be subject to any penalty up to and including incarceration.  Defendant files Motion for Reconsideration of above.

*3/28/14 - Defendant files petition for bankruptcy under Chapter 13.*

4/25/14 - Hearing on trustee's Motion for the Issuance of a Body Attachment for Defendant, as to the issue of contempt.

5/1/14 - Hearing on trustee's Motion for Contempt.  Court imposes suspended sentence for incarceration in the Montgomery County Detention Center and fine of $3,000.00, dismisses with prejudice Defendant's Motion to Modify Child Support and orders reimbursement of Plaintiff's travel expenses.  By order entered 5/15/14, the dismissal was without prejudice.

5/2/14 - Court signs Order finding Defendant in willful violation of Order of 2/4/14, and that he may purge his contempt by vacating Autumn Way by 5:00 p.m. the following day and that if he is found within 500 feet of Autumn Way he would be immediately incarcerated and setting appeal bond.

*5/7/14 - By Notice filed pursuant to Bankruptcy Rule 1017 (f)(3), Defendant/Debtor converts his bankruptcy case to a case under Chapter 7.  He claims $22,925.00 of the proceeds of the property as exempt.*

5/8/14 - Hearing on Defendant's ex parte Motion for a Stay Pending Appeal. Court enters Amended Contempt Order.[1]

*7/2/14 - On the Motion of Marie-Louise Tshiani, the bankruptcy court passed an order terminating the stay as to the subject property.*

7/22/14 - Court of Special Appeals denies Motion for a Stay Pending Appeal.[2]

---

[1]  A transcript of this hearing is attached as Exhibit 5 to Monahan's Motion to Dismiss. In the course of the hearing, Judge McCormick agreed that Defendant had lied to the court, that she had previously found he had lied to the court (p. 13) and that the contempt finding was to protect the dignity of the court (p. 27).

[2]  The docket reflects that at least 17 Circuit Court judges dealt with various aspects of the case.  Had the case been assigned to a single judge, the court suspects that that judge's fuse

\* \* \*

This court finds, as Circuit Court Judge McCormick explained at the hearing (Transcript at p. 27, Exhibit 5 to Monahan's Motion to Dismiss), that the contempt order was entered to uphold the dignity of the court.  This case is illustrative of the situation described (above) in *U.S. Spring Comm. Co. v. Buscher.  See also, S.E.C. v. Bilzerian*, 131 F.Supp.2d 10, 15 (D.D.C. Jan 12, 2001).  Judge McCormick and her colleagues had enough of the Debtor's continued disrespect of court rulings.  The court finds on the pleadings that there was no violation of the automatic stay in the filing of the contempt action that was directed at the Debtor's actions and not the estate.  The complaint will be dismissed.

An appropriate order will be entered.


cc:  All parties


**End of Memorandum of Decision**

---

would have been blown far earlier on account of the Debtor's disobedience of court orders and other misconduct.   The Debtor played fast and loose with the Circuit Court continuously from the filing of the case.  So far, he has gone through six attorneys of record during the history of the case.